UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
TIMOTHY J. SULLIVAN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
Fax (410) 962-3630

March 14, 2014

LETTER TO COUNSEL:

RE:    *Oliver Whaley v. Commissioner of Social Security*
       Civil No. TJS-11-3113

Dear Counsel:

This matter is before me by the parties' consent. (ECF Nos. 5 & 7). On November 11, 2011, Plaintiff Oliver Whaley ("Mr. Whaley") petitioned this Court to review the Social Security Administration's final decision to deny his claim for Disability Insurance Benefits ("DIB"). (ECF No. 1). I have considered Mr. Whaley's Motion for Summary Judgment (ECF No. 21), the Commissioner's Motion for Summary Judgment (ECF No. 24) and Mr. Whaley's Response in Opposition (ECF No. 25). I find that no hearing is necessary. *See* Loc. R. 105.6. This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed the proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). For the reasons that follow, I will grant the Commissioner's motion and deny the Plaintiff's motion. This letter explains my rationale.

On January 13, 2009, Mr. Whaley filed an application for DIB alleging disability commencing January 1, 2002. (Tr. 222). Mr. Whaley's claims were denied initially on February 20, 2009, and upon reconsideration on May 15, 2009. (Tr. 72, 79). A hearing was held before an Administrative Law Judge on August 12, 2010 (Tr. 69-89), and reopened on November 5, 2010 (Tr. 34-68). Following the hearing, on January 4, 2011, the ALJ determined that Mr. Whaley was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 13-28). On September 23, 2011, the Appeals Council denied Mr. Whaley's request for further review of the ALJ's decision. (Tr. 1-4). The ALJ's decision dated January 4, 2011 constitutes the final, reviewable decision of the agency.

The ALJ evaluated Mr. Whaley's claim for benefits using the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. At step one, the ALJ found that Mr. Whaley was not engaged in substantial gainful activity, and had not been engaged in substantial gainful activity since January 1, 2002. (Tr. 15). At step two, the ALJ found that Mr. Whaley suffered from the severe impairments of "diabetes mellitus, status post craniotomy and resection of left-sided meningioma, rheumatoid arthritis, hearing loss, posttraumatic stress disorder, and depression." (Tr. 15). At step three, the ALJ found that Mr. Whaley's impairments, separately and in combination, failed to meet or equal in severity any listed impairment. (Tr. 17).

The ALJ then determined that, despite Mr. Whaley's severe impairments, he retained the

residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c), but no overhead work, with occasional postural activities except no climbing of ladders, ropes or scaffolds, had to avoid concentrated exposure to odors, dust, gases, fumes, poor ventilation, hazards, and background noise, could perform frequent, but not constant, handling, fingering and feeling, and was further limited to simple, unskilled work which was not at a production pace.

(Tr. 20).

At step four, the ALJ determined that Mr. Whaley is unable to perform any past relevant work. (Tr. 26). At step five, however, the ALJ determined that considering Mr. Whaley's "age, education, work experiences, and residual functional capacity," there are other jobs that exist in in significant numbers in the national economy that he can perform. (Tr. 26-27). As a result of this determination, the ALJ found that Mr. Whaley was not disabled during the relevant time frame. (Tr. 27).

Mr. Whaley presents two arguments on appeal. First, he contends that the ALJ failed to properly analyze whether he met Listing 14.09 ("Inflammatory arthritis"). (ECF No. 21-1 at 7-12). Second, he argues that the ALJ's RFC determination is not supported by substantial evidence. (ECF No. 21-1 at 12-18). I will address each of these arguments in turn.

Mr. Whaley's first argument is that the ALJ failed to properly analyze whether he met Listing 14.09. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). The claimant bears the burden of demonstrating that his impairment meets or equals a listed impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986). In addition to meeting or medically equaling the criteria in the listings, a claimant's impairment must also meet the duration requirement set forth in 20 C.F.R. § 404.1509 in order to satisfy a listing. *See* 20 C.F.R. § 404.1525(c). An ALJ must analyze whether the claimant's impairment meets or equals a listing only when there is evidence in the record to support such a determination. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986); *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999) ("Under *Cook*, the duty of identification of relevant listed impairments and comparison of symptoms to Listing criteria is only triggered if there is ample evidence in the record to support a determination that the claimant's impairment meets or equals one of the listed impairments.").

Here, contrary to Mr. Whaley's argument that the ALJ offered only a "summary conclusion" as to why he did not meet Listing 14.09, the ALJ thoroughly explained her analysis. (Tr. 17). The ALJ found that "[a]lthough there is evidence of mild join swelling and inflammation," the evidence did not show that Mr. Whaley had an "inability to ambulate effectively or to perform fine and gross dexterous movements effectively" or that he had experienced "significant constitutional symptoms of nausea, vomiting, diarrhea, abdominal pain and weight loss or inflammatory spondylitis or spondyloarthropathy." (Tr. 18). The ALJ further found that "none of the remaining criteria" of Listing 14.09 applied to Mr. Whaley's

impairments, and that there was no evidence that his impairments were "equivalent in severity" to the listing. (Tr. 18). Mr. Whaley's argument that the ALJ did not sufficiently explain her reasoning is meritless.

Mr. Whaley also argues that a September 9, 2005 treatment note's report of an X-ray provides "ample evidence to support a determination" that he met Listing 14.09. (ECF No. 21-1 at 8). He insists that this X-ray contradicts the ALJ's finding "that there was no evidence of Plaintiff's inability to perform fine and gross dexterous movements effectively." (ECF No. 21-1 at 9). The treatment note Mr. Whaley refers to states:

> x-rays of hands: There is narrowing of the interphalangeal joints bilaterally. On the right, there is erosion of the head of the proximal phalanx of the right fifth finger and the head of the mid-phalanx of the right third finger. These findings are unchanged when compared with the previous examination of 11/25/03. The new findings on the right include erosion of the cortex of the base in the middle phalanx of the fifth finger, head of the middle phalanx of the fourth finger and base of the middle phalanx and head of the proximal phalanx of the second finger. On the left, there is an erosion of cortex at the base of the middle phalanx of the third finger. There are no new erosive changes on the left. There are bilateral vascular calcifications. There is degenerative joint disease of the intercarpal joints bilaterally.

(Tr. 2263). This part of the treatment note, however, does not establish whether or not Mr. Whaley could perform fine and gross dexterous movements effectively. His argument is undercut by the physical examination reported in this same note, where Dr. Madhavi Valiveti noted that Mr. Whaley's right and left wrists were only moderately tender, mildly swollen and that his hands exhibited mild synovitis. (Tr. 2263). That the ALJ did not reference this treatment note does not serve as a basis for finding that the ALJ's findings are not supported by substantial evidence. This single note (among approximately 2,000 pages of medical records) is not material to a finding of whether Mr. Whaley meets Listing 14.09, as the note itself demonstrates that his impairments did not cause the extreme functional loss required by the listing. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Mastro v. Apfel*, 270 F.3d 171, 179 (4th Cir. 2001) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

An even more crucial point is that the ALJ supported her findings by noting that Mr. Whaley has only a mild restriction in activities of daily living and "has a drivers' license and continues to drive locally. . . . operates a rider mower for one hour per week, occasionally prepares simple meals, and takes daily walks." (Tr. 18-19). The listings define the "inability to perform fine and gross movements effectively" as

> an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living.

3

> Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

20 C.F.R. pt. 404, subpt. P, app. 1 §§ 1.00(B)(2)(c), 14.00(C)(7). Substantial evidence supports the ALJ's finding that Mr. Whaley does not have the extreme loss of function with regard to the ability to perform fine and gross movements effectively that is required by Part A of Listing 14.09.

In support of his argument that he meets Part B of Listing 14.09, Mr. Whaley states that in October 2006 he sought medical treatment at an emergency room and "was noted to have had one month of nausea and vomiting." (ECF No. 21-1 at 1) (citing Tr. 2098). Mr. Whaley cannot prevail on this argument because these symptoms were not "constitutional symptoms" related to his arthritis. The symptoms were related to lung "infiltrates" and "possible pneumonia." (Tr. 2101). In addition, these symptoms do not meet the durational requirement of 20 C.F.R. §§ 404.1509 and 1525(c). By the end of October 2006, Mr. Whaley was no longer suffering from nausea or vomiting. (Tr. 2102-2104).

Mr. Whaley's argument that the ALJ "failed to consider Listing 14.09, subsection D" can be readily disposed of. Part D of Listing 14.09 requires "[r]epeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)" and marked limitations in either activities of daily living, maintaining social functioning or concentration, persistence or pace. 20 C.F.R. pt. 404, subpt. P, app. 1 § 14.09(D). This argument fails because, as noted above, Mr. Whaley's October 2006 nausea and vomiting symptoms were not related to his arthritis and lasted for less than two months. In addition, the ALJ specifically found that Mr. Whaley had only mild limitations in activities of daily living, mild limitations in maintaining social functioning, and moderate limitations with regard to concentration, persistence or pace. (Tr. 18-19). The ALJ properly analyzed whether Mr. Whaley met Listing 14.09 and her findings with respect to the listing are supported by substantial evidence.

Mr. Whaley's second argument is that the ALJ's RFC determination is not supported by substantial evidence. RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96–8p, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ must consider even those impairments that are not "severe" in formulating the RFC. 20 C.F.R. § 404.1545(a)(2). In determining a claimant's RFC, the ALJ must evaluate the claimant's subjective symptoms using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 404.1529(a). First, the ALJ must determine whether objective evidence shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. § 404.1529(b). Once the claimant makes that threshold showing, the ALJ must evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c). At this second stage, the ALJ must consider all the available evidence, including medical history, objective medical evidence, and statements by the claimant. *Id*. The ALJ must also assess the credibility of the

claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. SSR 96–7p, 1996 WL 374186 (S.S.A. July 2, 1996).

Mr. Whaley first argues that the ALJ did not consider enough medical opinion evidence in formulating the RFC. This argument is not persuasive because an ALJ is required to base an RFC determination on all of the relevant medical and other evidence in the record, but need not obtain expert medical opinions to make an RFC determination. *See Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 2301-31 (4th Cir. 2011). Here, the ALJ discussed at length Mr. Whaley's treatment records related to his arthritis, and used these records to formulate the impact of his arthritis (as well as his other impairments) on his functional abilities. The ALJ adequately explained her reasoning, and her RFC determination is supported by substantial evidence.

Next, Mr. Whaley argues that because of the "direct conflict in the medical evidence" presented by the September 9, 2005 treatment note (Tr. 2263), the ALJ was required to order a consultative examination. This argument fails for two reasons. First, as explained above, this treatment note does not present the "direct conflict in the medical evidence" that Mr. Whaley suggests, but is instead consistent with the ALJ's RFC determination. Second, ALJs have broad discretion in determining whether to order a consultative examination. The Regulations only envision that an ALJ will request a consultative examination if a claimant's "medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled." 20 C.F.R. §§ 404.1517 and 1519f ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."). A consultative examination is only needed when the evidentiary record before the ALJ is inadequate. *France v. Apfel*, 87 F. Supp. 2d 484, 489-90 (D. Md. 2000). Here, the Court finds that the medical evidence of record was sufficient to permit the ALJ to make an RFC determination without the necessity of ordering a consultative examination.

Finally, Mr. Whaley argues that the ALJ's finding that his rheumatoid arthritis was "generally stable" is not supported by substantial evidence. (ECF No. 21-1 at 16) (citing Tr. 24). Mr. Whaley argues that the objective medical evidence reveals "significant flare ups and multiple appointments due to arthritic flare ups." (ECF No. 21-1 at 10, 16). Tellingly, however, the treatment records Mr. Whaley cites support the ALJ's finding that his arthritis was "generally stable." In a treatment note dated June 19, 2003, it was noted that Mr. Whaley had "no flaring of his [rheumatoid arthritis]," his pain was "adequately controlled" by medication, and his rheumatoid arthritis was stable. (Tr. 2197-98). Treatment notes from November 25, 2003 (Tr. 2204), February 10, 2004 (Tr. 2228), February 21, 2006 (Tr. 2231-32) and November 9, 2006 (Tr. 2202) all noted that Mr. Whaley's rheumatoid arthritis was stable and controlled with medication. The ALJ's RFC determination with respect to Mr. Whaley's functional limitations due to his rheumatoid arthritis is supported by substantial evidence.

For the reasons set forth herein, Mr. Whaley's Motion for Summary Judgment (ECF No. 21) will be DENIED, and the Commissioner's Motion for Summary Judgment (ECF No. 24) will be GRANTED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

_____/s/_____
Timothy J. Sullivan
United States Magistrate Judge